**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A2089. WRIGHT v. BURCH.

BRANCH, Judge.

A trial court enforced a purported settlement of a child support dispute between Monica Wright and her ex-husband Thomas Burch and awarded Burch attorney fees under OCGA § 9-15-14 (b). On appeal, Wright argues that the trial court erred when it enforced the settlement as to child support. Wright also argues that the fee award was erroneous because the evidence did not support such an award, because it was not accompanied by findings of fact, and because Wright had been asserting a novel legal theory in good faith below. We conclude that although the trial court was authorized to conclude that the parties had agreed to submit the settlement agreement to the court, it was not authorized to enforce the terms of the agreement as to past-due arrearages, or to modify future child support payments without ensuring that such a

modification was in the best interests of the child. We therefore reverse or vacate those portions of the trial court's order modifying child support and awarding fees, and we remand for further proceedings.

The relevant facts are not in dispute. The record shows that the parents were married in 1996, and the child at issue was born in September 1999. Wright and Burch's divorce was finalized in Tennessee on December 16, 2003. The marital dissolution agreement incorporated into the decree provided that Burch would pay Wright child support in the amount of $600 per month, except when the child was living with Burch, until the termination of the agreement. The agreement specified that

> *no action by the parties will be effective to reduce the child support set forth herein after the due date of each payment* and that each party understands that *court approval must be obtained before the child support can be reduced* unless such payments are automatically reduced or terminated under the terms of this [agreement].

(Emphasis supplied.) The agreement also provided that it "shall not be modified or annulled by the parties except by written agreement signed by both parties[.]" After the divorce, Wright, who resided in Georgia, had primary custody of the child. In July

2013, however, the child elected to live with Burch in Maryland, and moved there the following month.

Meanwhile, in May 2013, Burch filed the instant petition to domesticate the Tennessee divorce decree and for money had and received. The petition alleged that pursuant to the marital dissolution agreement, the parties had agreed to reduce Burch's child support obligations between September 2004 to December 2007 to $400 a month. Burch also alleged that the Georgia Department of Human Resources (DHR) had erroneously garnished his paychecks in excess of his child support obligations, transferred approximately $2,100 to Wright, and misstated his arrearage by more than $39,000. Burch sought to make any future child support payments directly to Wright rather than by means of garnishment and transferral. That same month, Wright wrote to Burch's counsel that although she "[d]id not agree" with Burch's calculation of his arrearage, DHR had made "a severe error" in reaching its estimate of the arrearage. Wright also wrote to DHR asking that there "not be any garnishment of arrears" from Burch. Wright did not file any answer to Burch's petition.

The parties immediately began negotiations as to the arrearage, the child's upcoming change of residence, and a reduction in child support. On July 8, 2013,

3

Burch amended his petition to include a claim for modification such that the parties would have joint custody, with child support also modified "in accordance with any change in custody[.]." On October 13, the parties reached an apparent agreement as to a draft consent order purporting to modify both custody and child support. The draft consent order specifically provided that "all arrearage issues are resolved by this order and no back child support is owed by [Burch] to [Wright]" and that Wright would pay Burch $385 per month in child support (with additional provisions for other eventualities). The parties also agreed not to require an income deduction order; instead, Wright would pay child support "directly" to Burch.

Burch's counsel emailed Wright's counsel that once she had received Wright's signature on the draft consent order, Burch's counsel would forward them to the trial court. Wright's counsel immediately emailed Wright's assent to these arrangements. On October 17, Burch's counsel notified the court of the agreement, submitted the draft consent order (without signatures), and asked that the parties be excused from a scheduled status conference. The status conference was duly canceled.

On October 29, 2013, Burch's counsel, who had not received the executed draft consent order, emailed Wright's counsel that she needed them "by the end of the week or I will be filing a [m]otion to [e]nforce." Burch's counsel added that Burch's

4

pay was "still being garnished" and that "this is an intolerable situation." On November 8, Wright's counsel responded that Wright had indicated that the documents were in the mail and that he would forward them to Burch and the court as soon has he received them. On November 12, however, Wright's counsel moved to withdraw from the matter. Two days later, on November 14, 2013, Burch moved to enforce the purported settlement and for attorney fees. The motion noted that Burch would not have requested that the status conference be cancelled unless the parties had reached an agreement concerning the continued and incorrect garnishment "for an arrearage which the parties agreed did not exist and for payment of child support for a child who was residing in his custody." Between September and November March 2013, Wright returned more than $1,400 in improperly garnished funds to Burch.

On December 10, 2013, the trial court granted Wright's counsel's motion to withdraw. On December 30, Wright's new counsel filed a counterclaim for contempt arguing that no settlement had been reached, that any change to child support payments required court approval, and that Burch had failed to deliver the child to the mother for Christmas visitation.

5

A hearing on Burch's motion to enforce the settlement was held on February 21, 2014. At the outset of the hearing, Wright's counsel conceded that the parties had reached an agreement, but asserted that any such agreement was "illegal" because under both Tennessee and Georgia law, parents were not authorized to modify child support arrangements retroactively or informally. Burch responded that these parties were free to enter into an agreement as to arrearages already owed, that Wright had not paid any child support to Burch, and that Wright continued to receive more than $100 a week as a result of the continued garnishment of Burch's salary. Burch also submitted an affidavit detailing the fees expended in pursuing the settlement and submitting that the nearly $6,000 in fees requested was a reasonable amount. Wright then cross-examined Burch's counsel as to fees. The trial court held that the settlement was enforceable, entered the consent order as part of its judgment, and awarded Burch $2500 in fees against Wright and her counsel under OCGA § 9-15-14 (b) as "warranted and appropriate given the circumstances."

Wright applied for discretionary review of the fee award on March 27, 2014. In an amended order entered four days later, the trial court found it "reasonable to infer that [Wright's] motivation" in refusing to sign the consent order and filing the contempt counterclaim was "to delay as long as possible the entry of the [o]rder

6

which suspends the ongoing garnishment of [Burch's] paychecks and which requires [Wright's] payment of child support on behalf of the minor child, who had been in [Burch's] custody for several months at the time the agreement was reached." On April 21, we granted Wright's application for discretionary review of the trial court's earlier orders. This appeal followed.

1. Wright first argues that the trial court erred when it enforced the settlement agreement as to child support because the parties were not authorized to reach any private agreement on that subject without court approval.[1] We agree in part.

(a) *The Post-Application Order*. As a preliminary matter, we note that the March 21 order finding Wright guilty of delay was entered four days after Wright applied to this Court for discretionary review of the trial court's earlier orders, and thus after the trial court had lost jurisdiction in the case. See OCGA § 5-6-35 (h) ("The filing of an application for appeal shall act as a supersedeas to the extent that a notice of appeal acts as supersedeas."). The March 21 order was therefore void. *Rainey v. Lange*, 261 Ga. App. 491, 492 (2) (583 SE2d 163) (2003) ("any attempts

---

[1] The argument portion of Wright's brief does not follow the order of the four enumerated errors and lacks any numbering as to those errors. As such, the brief violates Court of Appeals Rule 25 (c) (1). The brief also fails to cite any specific page or pages in the appellate record. As a result, we could deem any or all of Wright's arguments abandoned. Court of Appeals Rule 25 (c) (2).

by [a] trial court to alter its ruling" on a motion for new trial in the wake of a second application for discretionary review would have "no effect because, at that time, the trial court had, in fact, been divested of its jurisdiction").

(b) *The Parties' October 2013 Agreement.* The 2003 marital dissolution agreement provided that "this agreement should not be modified or annulled by the parties except by written agreement signed by both parties." As Wright concedes on appeal, the parties had reached an agreement in writing by October 2013, before the withdrawal of Wright's former counsel. See *Tidwell v. White*, 220 Ga. App. 415, 417-418 (2) (469 SE2d 258) (1996) (affirming enforcement of a settlement when letters and documents between counsel memorialized the agreement; a party's denial by means of new counsel that an agreement had been reached was "immaterial") (citation and punctuation omitted).

As our Supreme Court has held, however, a modification action "is the sole means by which a child support award included in a divorce decree may be modified." *Robertson v. Robertson*, 266 Ga. 516, 517 (1) (467 SE2d 556) (1996). "While the parties are free to enter into an agreement purporting to modify [a] child support obligation, that agreement becomes enforceable only when incorporated in

8

an order of the court." Id. (citation omitted). This trial court was authorized to conclude that the parties had agreed to submit the settlement agreement to the court.

(c) *Arrearages as to Past Child Support Payments*. The parties, however, were not empowered to reach a compromise as to any arrearage in child support payments already due, and the trial court was not authorized to modify the divorce decree as to such payments.

"[A]n order modifying child support may operate only prospectively." *Robertson*, 266 Ga. at 517 (1) (citation omitted). Specifically, "a reduction in child support arrearage constitutes an improper, retroactive modification of support obligations." *Ga. Dept. of Human Resources v. Prater*, 278 Ga. App. 900, 902 (2) (630 SE2d 145) (2006) (footnote omitted). Consistent with these holdings, the parties' 2003 marital dissolution agreement provided that "no action by the parties will be effective to reduce the child support set forth herein after the due date of each payment."

"[A] trial court can modify child support obligations and enter orders regarding repayment of past-due amounts pursuant to OCGA § 19-11-12 (e).[2] But it cannot simply forgive or reduce the past-due amount owed under a valid child support order." *Prater*, 278 Ga. App. at 903 (2). The trial court was authorized to determine the true amount of the arrearage at issue here and to enter orders as to its repayment. Id. The court erred, however, when it enforced the settlement to the extent that it reduced Burch's arrearage as to child support payments past due as of October 2013. Id.; *Robertson*, 266 Ga. at 517 (1) (trial court erred in considering evidence of parties' intent to compromise child support obligations in its calculation of a party's arrearage; "because a reduction in the amount of the arrearage, based on the alleged

---

[2] OCGA § 19-11-12 (e) provides:

When the trier of fact, the administrative law judge for administrative orders, or a judge of the superior court for court orders, as the case may be, determines that there is a significant inconsistency between the existing child support order and the amount of child support which would result from the application of Code Section 19-6-15, the trier of fact may use this inconsistency as the basis to increase or decrease the amount of support ordered. *The trier of fact may also address the repayment of any arrears accumulated under the existing order*.

(Emphasis supplied.)

10

agreement of the parties would constitute a retroactive modification of the final judgment and decree," such reduction was "unsupportable").

(d) *Future Child Support Payments*. The trial court was empowered to consider the parties' private agreement as to future child support payments, and to modify the divorce decree accordingly, as long as the court followed the procedures laid out in OCGA § 19-6-15 (k) and concluded after doing so that the proposed modification was in the child's best interest.

A modification of a child support award requires "a substantial change in either parent's income and financial status or the needs of the child." OCGA § 19-6-15 (k) (1). The statute also provides that a trial court

> may modify and revise the previous judgment, in accordance with the changed circumstances, income and financial status of either parent, or in the needs of the child, if such change or changes are satisfactorily proven so as to warrant the modification and revision and such modification and revisions are in the child's best interest.

OCGA § 19-6-15 (k) (4).

The 2003 marital dissolution agreement authorized the parties to modify the award established in the divorce decree only if the modification was "made in writing and executed with the same formality as" the original agreement, and noted that

11

"court approval must be obtained before [future] child support can be reduced."

Burch properly amended his petition in July 2013 to include a claim for modification

as to both custody and child support, a claim which would not have been necessary

had the parties been empowered to settle disputes as to future child support payments

by private agreement, as they attempted to in October 2013.

This trial court was thus required to consider whether the changes in future

child support agreed to by the parties was in the child's best interest, and it erred

when it failed to do so. OCGA § 19-6-15 (k) (4); see also OCGA § 19-6-15 (k) (1);

*Pearson v. Pearson*, 265 Ga. 100, 101 (454 SE2d 124) (1995) (before private

agreement as to child support could be incorporated into court order, trial court had

obligation to consider whether agreed-upon support is sufficient based on child's

needs and parents' ability to pay); *Arrington v. Arrington*, 261 Ga. 547, 548 (407

SE2d 758) (1991) (trial court is not bound by agreement between parties regarding

child support, but should consider on remand whether such support is sufficient based

on the children's needs and the parent's ability to pay); *Amos v. Amos*, 212 Ga. 670

(2) (95 SE2d 5) (1956) (court is empowered to reject parties' proposed modification

12

of child support).[3] Any other result "would destroy the power of our courts to reject inadequate, overreaching, unconscionable or otherwise invalid" settlement agreements of child custody disputes. *Davis*, 251 Ga. at 392 (1).

For all these reasons, we affirm the trial court's order to the extent that it found that the parties had entered into a settlement agreement in October 2013, but we reverse the enforcement of that agreement as to arrearage, and we vacate the remainder of the trial court's order enforcing the settlement and awarding attorney fees to Burch. On remand, the trial court should hold a hearing as soon as practicable to consider (1) the proper amount of any child support arrearage as of the date of the hearing, but disregarding the parties' purported settlement of October 2013 as to such arrearage; (2) whether future child support payments should be modified as in the child's best interest under the guidelines set out in OCGA § 19-6-15 (k);[4] and (3)

---

[3] See also Dan E. McConaughey, Georgia Divorce, Alimony, and Child Custody (2013-2014 ed.), § 16.2, p. 888 ("[A]fter a divorce decree becomes final, the parties may not voluntarily or by subsequent agreement modify its terms, even though the agreement is later made the order of the court by consent[;] [r]ather, the agreement must have been incorporated into the final judgment, and thereafter either party may make application to the court for modification pursuant to the terms of the decree.").

[4] See OCGA § 19-6-15 (k) (4) (a trial court modifying child support "shall enter a written order specifying the basis for the modification, if any, and shall include all of the information set forth in paragraph (2) of subsection (c) of this Code section [concerning the use of a child support worksheet].").

13

whether either party is entitled to reasonable attorney fees under OCGA § 19-6-15 (k) (5)[5] or OCGA § 9-15-14. We also note that Wright's counterclaim for contempt remains pending below.

2. Our vacatur of the trial court's award of fees to Burch under OCGA § 9-15-14 moots Wright's contentions as to that award.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded with direction. Barnes, P. J., and Boggs, J., concur.*

---

[5] See OCGA § 19-6-15 (k) (5) ("In proceedings for the modification of a child support award pursuant to the provisions of this Code section, the court may award attorney's fees, costs, and expenses of litigation to the prevailing party as the interests of justice may require.")