**OFFICE OF THE ATTORNEY GENERAL, Appellant,**

v.

**Sharon W. BUHRLE, Appellee.**

No. 13–04–448–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 22, 2006.

Rehearing Overruled Jan. 18, 2007.

Barry R. McBee, First Asst. Atty. Gen., Rhonda Amkraut Pressley, Chief, Appeals and Research Section Child Support Enforcement, Greg Abbott, Atty. Gen., John B. Worley, Child Support Division, Austin, for appellant.

Peter Steiner, Bonilla & Chapa, Corpus Christi, for appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA, and RODRIGUEZ.

## OPINION

Opinion by Chief Justice VALDEZ.

Appellant, the Attorney General of Texas, appeals a trial court's denial of a motion to enforce a foreign child support order that was registered and confirmed in this State. The appellee, Sharon Wanda Buhrle, is the non-custodial parent. The attorney general presents four issues on appeal. He contends that (1) because Sharon failed to timely contest the Attorney General's registration for enforcement of the Georgia divorce decree, she cannot later contend that the decree did not order her to pay child support; (2) the Georgia divorce decree orders Sharon to pay child support; (3) he conclusively proved as a matter of law that as of March 31, 2004, Sharon owed child support arrearages totaling $18,916.75; and (4) the domestication of the Georgia support order in Florida should be recognized and enforced in this State under the Full Faith and Credit Clause of the U.S. Constitution.[1]  Sharon

---

1. The fourth issue is not expressly articulated and is argued under the second issue's heading. It is, however, distinguishable.

filed a response to the attorney general's brief. We affirm the trial court's judgment. Tex.R.App. P. 43.2(a).

## I. BACKGROUND

### A. Factual Background

Steven and Sharon Buhrle were granted an uncontested, *pro se*, divorce by a Georgia court on December 10, 1992. The divorce decree incorporates a separation agreement that was executed by the couple on November 2, 1992. When the couple divorced, both were in their early twenties, shared a young child, and were by Sharon's account unsophisticated. Neither party consulted an attorney.

The separation agreement that was filed with the divorce decree was a fill-in-the-blank form that the parties obtained at a library. The agreement (1) gives Steven permanent legal custody of the couple's child, (2) grants Sharon visitation rights, (3) obligates the payment of thirty-six dollars a week in child support, (4) requires Steven to maintain health insurance for the child, (5) allows Steven to claim the child for tax purposes, (6) waives each individual's right to alimony, (7) divides marital property, and (8) provides for the agreement's modification. The modification provision states that the "agreement shall be presented to the Court and incorporated by reference into any judgment or decree" dissolving the marital relationship. The agreement accomplishes all of the aforementioned-promises in four pages, with more than adequate room for the signature lines. In short, it is a simple document that accomplishes much.

Sharon and Steven filled in the blanks for all of the aforementioned promises, with the exception of the child support provision. They intentionally left that provision blank because, as Sharon stated, "we didn't want to put anything in there."

The judge, before whom the couple appeared, would not allow them to leave the child support provision blank. Sharon suggested the figure that was entered because that was the amount of money she had left after paying bills. The agreement was executed, and a final divorce decree was signed about a month later.

After the divorce, there was a child support and visitation dispute between Sharon and Steven in Florida. The dispute was resolved, as evidenced by an order denying Steven's motion for contempt. That order directed Sharon to resume payment of child support in the amount of thirty-six dollars a week plus an additional fourteen dollars a week for arrearages. The record does not make any other mention of the Florida order and shows that Sharon made a few nominal child support payments through the Florida child support system.

### B. Procedural Background

The judgment that is the subject of this appeal denies the attorney general's motion to enforce a child support judgment from a foreign state. On October 13, 2003, the attorney general filed a notice of registration of foreign support order under the Uniform Interstate Family Support Act and a motion to enforce the foreign child support order. Sharon was served with the notice and motion on October 23, 2003. Sharon did not file a response to the court papers served on her. On March 3, 2004, an associate judge denied the attorney general's motion to enforce the foreign child support order. The associate judge's order was appealed to a district court and denied on April 1, 2004. The attorney general then filed a motion to reconsider and a motion for new trial, or in the alternative, a motion to modify, correct, or reform the judgment. Both motions were denied, and an appeal was timely perfected.

## II. ANALYSIS

### A. Standard of Review

■ An order regarding child support will not be overturned unless the trial court clearly abused its discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see In re T.J.L.*, 97 S.W.3d 257, 265 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (reviewing enforcement order under abuse of discretion standard of review). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *Worford*, 801 S.W.2d at 109. A trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

### B. Registration & Enforcement of a Foreign Support Order

The Uniform Interstate Family Support Act ("the Act"), Tex. Fam.Code Ann. §§ 159.001–.901 (Vernon 2002 & Supp. 2006), provides that a party may register an out-of-state support order or income-withholding order in Texas for enforcement. Tex. Fam.Code Ann. § 159.601 (Vernon 2002). Registration of another state's support order occurs when the registering party files the order with Texas's registering tribunal, which enforces the order just as if a Texas court originally issued it. *Id.* § 159.603. A nonregistering party opposing the registration is required to request a hearing within twenty days. *Id.* § 159.606(a). The nonregistering party has the burden of proving one or more of eight enumerated defenses.[2] *Id.* § 159.607(a) (Vernon Supp.2006). One of the defenses is that there is a defense under the law of this state to the remedy sought. *Id.* § 159.607(a)(5).

■ In his first issue, the attorney general argues that because Sharon failed to timely contest the Attorney General's registration for enforcement of the Georgia divorce decree, she cannot later contend that the decree did not order her to pay child support. He correctly asserts that the Georgia divorce decree was registered in Nueces County and Sharon did not contest registration. Therefore, the order was confirmed by operation of law. *Id.* § 159.606(b) (Vernon 2002); *In re Kuykendall*, 957 S.W.2d 907, 908–09 (Tex.App.-Texarkana 1997, no pet.). Confirmation of a registered order precludes further contest of the order with respect to any matter that could have been asserted at the time of registration. Tex. Fam.Code Ann. § 159.608 (Vernon Supp.2006). The attorney general argues Sharon's assertion that the support order does not order her to pay child support or, alternatively, was too vague or ambiguous to be enforced, is a defense under the law of this State to the remedy sought that should have been raised during the twenty-day period following notice of registration. *See Id.* § 159.607(a)(5) (Vernon Supp.2006).

Though poorly articulated, Sharon argues that the child support provision incorporated into the Georgia divorce decree is not only vague and ambiguous, but invalid under Georgia law and therefore unen-

---

**2.** The enumerated defenses include the following: (1) the issuing tribunal lacked personal jurisdiction over the contesting party; (2) the order was obtained by fraud; (3) the order has been vacated, suspended, or modified by a later order; (4) the issuing tribunal has stayed the order pending appeal; (5) there is a defense under the law of this state to the remedy sought; (6) full or partial payment has been made; (7) the statute of limitation under section 159.604 precludes enforcement of some of all of the alleged arrearages; or (8) the alleged controlling order is not the controlling order. Tex. Fam.Code Ann. § 159.607(a) (Vernon Supp.2006).

forceable in this State. *See Bard v. Charles R. Myers Ins. Agency, Inc.,* 839 S.W.2d 791, 795 (Tex.1992) (holding that the validity of a judgment is determined by the laws of the state where it was rendered). We hold that because the order was confirmed by operation of law, Sharon is precluded from contesting the order's validity or enforcement. The statute clearly states that she is to assert a defense under the law of this state to the remedy sought within twenty days or else the registered order becomes confirmed by operation of law. *See* Tex. Fam.Code Ann. §§ 159.606(a), 159.608 (Vernon 2002). Sharon received the notice on October 23, 2005 and did not file a request for a hearing within twenty days after receiving the notice. She first contested the registered support order on March 3, 2006 during an enforcement hearing before an associate judge. The attorney general's first issue is sustained.

### C. Interpretation of the Georgia Divorce Decree

◼ By his second issue, the attorney general argues the Georgia divorce decree orders Sharon to pay child support, and the trial court erred by not entering an order enforcing such. The attorney general claims his construction of the order is correct because it (1) is the most reasonable, (2) the only interpretation that comports with the law of this State, and (3) is what the Georgia court intended.

The relevant portion of the support order in question reads, "The sum of $36.00 per week PER CHILD as child support for the support, maintenance and education of such children.... The foregoing

payments shall be made on the first day of each week, beginning the 1st day of December, 1992, and continuing thereafter as provided by this agreement." The provision does not clearly impose an obligation on a particular individual. It is therefore uncertain.

The attorney general invites us to use Texas jurisprudence to read the Georgia support order in order to determine its meaning. However, we must look to Georgia law to determine the support order's nature. Tex. Fam.Code Ann. § 159.604(a) & (a)(1) (Vernon Supp.2006) ("Except as provided by Subsection (d), the law of the issuing state governs: (1) the nature, extent, amount, and duration of current payments under a registered support order....."); *see also AG of Texas v. Litten,* 999 S.W.2d 74, n. 7 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

◼ In Georgia, a support order that fails to comply with statutory requirements is invalid. *See Esser v. Esser,* 277 Ga. 97, 586 S.E.2d 627, 629 (2003). In *Esser,* the divorcing couple crafted a separation agreement by which the husband's child support obligation would be offset by the amount the wife owed husband for his equitable interest in the marital home. *Id.* at 628. The child support scheme required a trial court to calculate the amount of child support presumed to be sufficient by applying the applicable percentages to a parent's gross income. Ga.Code Ann. § 19–6–15(b)(5) (2003). After determining the presumptive obligation, the trial court could alter the obligation after it made written findings that special circumstances necessitated a deviation.[3] The trial court incorporated the Esser's agreement into

---

**3.** "The trier of fact shall vary the final award of child support, up or down, from the range enumerated in paragraph (5) of subsection (b) of this Code upon a written finding that the presence of one or more of the following

special circumstances makes the presumptive amount of support either excessive or inadequate: ..." Ga.Code Ann. § 19–6–15(c) (2003).

the final divorce decree. *Id.* The Georgia Supreme Court noted that the trial court's order did little more than adopt the Esser's settlement agreement. *Esser,* 586 S.E.2d at 629. The court held that the trial court's divorce decree failed to include written findings as to the parties' gross incomes, calculations as to the application of the statutory child support guidelines, and the presence of special circumstances justifying the trial court's departure from the guidelines and that such a "decree did not make a valid child support award." *Id.* The judgment was reversed and remanded. *Id.*

The pertinent Georgia statute reads, "In the final verdict or decree, the trier of fact **shall specify** in what amount and **from which party** the minor children are entitled to permanent support." GA.CODE ANN. § 19-6-15 (1992) (emphasis added). The relevant portion of the provision in question reads, "The sum of $36.00 per week PER CHILD as child support for the support, maintenance and education of such children...." The registered support order does not comply with the Georgia statute governing divorce decrees because it fails to specify which party is to pay the minor child's support. Therefore, the support order in the instant case is uncertain on its face and invalid under Georgia law because it does not comport with statutory requirements. *See Id.; see also Esser,* 586 S.E.2d at 629. Even if the attorney general's construction of the support order is the most reasonable and conforms to the intent of the Georgia trial court, the underlying order is nevertheless invalid under Georgia law.

**D.   Enforcement of a Void Judgment**

■   The attorney general's invitation for us to use Texas jurisprudence to fashion a discernable enforcement order from an invalid Georgia divorce decree is unwise because there may be circumstances where the two bodies of law do not comport with each other. For example, he argues his construction of the support order is the most reasonable under Texas law because a child's sole managing conservator may not be required to pay support to the child's possessory conservator. *Peterson v. Office of the Attorney General,* 990 S.W.2d 830, 832–33 (Tex.App.-Forth Worth 1999, no pet.); *Lueg v. Lueg,* 976 S.W.2d 308, 313 (Tex.App.-Corpus Christi 1998, pet. denied). However, in Georgia a trial court may properly order a custodial parent to pay for support of minor children while visiting with the noncustodial parent. *James v. James,* 246 Ga. 233, 271 S.E.2d 151, 151 (1980) (holding that the legislature did not specify that only non-custodial parents are to pay child support). A Georgia decree that properly allows visitation payments by the custodial parent to the noncustodial parent but is, in some other way, in need of interpretation could be challenged if the attorney general's choice of law druthers prevailed.

Because the support order is invalid under Georgia law, it is void in Texas. *See Bard,* 839 S.W.2d at 795; *see also Dikeman v. Snell,* 490 S.W.2d 183, 186 (Tex. 1973) (in dicta the Texas Supreme Court has used the terms invalid and void interchangeably). If a trial court may properly refuse to enter judgment on back child support payments because of an ambiguous, indefinite, and uncertain order, *Gross v. Gross,* 808 S.W.2d 215, 219 (Tex.App.-Houston [14th Dist.] 1991); *see also Templet v. Templet,* 728 S.W.2d 844, 847 (Tex. App.-Beaumont 1987, no writ), it stands to reason that a trial court may properly refuse to enter a judgment on a void order. Therefore, the trial court did not abuse its discretion by refusing to enforce the registered support order. The attorney general's second issue is overruled.

### E. Full Faith and Credit of the Florida Order

By his fourth issue, the attorney general argues that an order issued by a Florida court requiring Sharon to pay thirty-six dollars and an additional fourteen dollars towards unpaid arrearages should be given full faith and credit and conclusively establishes that the correct interpretation of the Georgia decree is that Sharon is required to pay thirty-six dollars a week. The attorney general's application of conventional full faith and credit jurisprudence to the instant case is misplaced.

A brief recitation of the applicable law is required:

> After a tribunal of this or another state determines which order is the controlling order and issues an order consolidating arrearages, if any, the tribunal of this state shall prospectively apply the law of the state issuing the controlling order, including that state's law on interest on arrearages, current and future support, and consolidated arrearages. Tex. Fam.Code Ann. § 159.604(d) (Vernon Supp.2006)
>
> Subsection (d) may appear to state another truism—the law of the State that issued the controlling order is superior with regard to the terms of the support order itself. However, the last clause in the sentence provides a very important clarifying provision; that is, the law of the issuing State is to be applied to the consolidated arrears, even if the support orders of other States contributed to a portion of those arrears. Sampson & Tindall, Texas Family Code Annotated, § 159.604(d), Commissioners' Comment p. 819 (2003).

The attorney general's notice of registration was for the Georgia support order, not the Florida order. Moreover, the Florida order in the record is an order denying Steven's motion for contempt.

He has neither argued nor proven that Florida issued the controlling order in the instant case. Therefore, the Florida order is merely an "enforcement tool" and not a judgment entitled to full faith and credit. *See* Tex. Fam.Code Ann. § 159.604(d) (Vernon Supp.2006); *accord Depart. of Rev. ex rel. Wallace v. Delaney,* 962 P.2d 187, 190–192 (Alaska 1998) (holding that a similar statute should be interpreted to give deference to an original, unmodified order of support because such an interpretation aids in the enforcement of support obligations when parents travel to new jurisdictions and also recognizes the practicalities associated with interstate support enforcement). The Georgia support order is the live order in this instant case. Accordingly, the attorney general's fourth issue is overruled.

### III. CONCLUSION

Because of our disposition of issues one, two, and four, we need not address the attorney general's third issue. Tex.R.App. P. 47.1. The judgment of the trial court is affirmed.